## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ALEXANDER WILLIAMS, by and
through his Guardian, Conservator, and
Next Friends, DOUGLAS WILLIAMS
and LISA WILLIAMS; DOUGLAS
WILLIAMS; and LISA WILLIAMS,

Plaintiffs,

v.

FULTON COUNTY SCHOOL
DISTRICT, *et al.*,

Defendants.

CIVIL ACTION NO. 1:14-CV-00296-AT

## DEFENDANT FULTON COUNTY SCHOOL DISTRICT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING THE CLAIMS ASSERTED BY PLAINTIFF ALEX WILLIAMS

Defendant Fulton County School District ("FCSD") submits this Reply in

support of its Motion for Summary Judgment regarding the claims asserted against

it by Plaintiff Alex Williams, showing this Court the following:

## ARGUMENT AND CITATION TO AUTHORITY

## I.    PLAINTIFF'S CLAIMS ARE UNTIMELY.

FCSD has argued that Plaintiff's claims are untimely because they were filed

after expiration of the two-year statute of limitations and neither the IDEA's

administrative exhaustion requirement nor Plaintiff's incompetency tolled the

limitations period. Plaintiff does not dispute that he filed this lawsuit more than two years after his claims accrued. He instead makes three arguments in a futile attempt to evade the limitations period. First, forgetting that that he advocated for the opposite position before the Georgia Office of Statement Administrative Hearings ("OSAH"), Plaintiff now incorrectly asserts that the IDEA's administrative exhaustion requirement also applied to his non-IDEA personal injury claims and tolled the two-year statute of limitations. Second, Plaintiff disregards adverse decisions by the Georgia Supreme Court and Georgia Court of Appeals and argues that his incompetency *permanently* exempts him from complying with the two-year statute of limitations. And third, citing no evidence of illegal acts by any of the Defendants, Plaintiff limply contends that the statute of limitations for his conspiracy claims is extended under the continuing violation doctrine. FCSD will address each of these arguments individually.

### a. The IDEA's Administrative Exhaustion Requirement Did Not Toll the Statute of Limitations for Plaintiff's Non-IDEA Claims.

Plaintiff now contends that the IDEA's administrative exhaustion requirement applied to his IDEA and non-IDEA alike and tolled the two-year statute of limitations until February 1, 2012, the date of OSAH's final order on Plaintiff's due process hearing request.[1] But that argument is the polar opposite of the position that

---

[1] In his response, Plaintiff suggests that this Court already decided this issue in his favor in the Court's January 9, 2015, Order on Defendants' Motion to Dismiss. (Doc.

Plaintiff took before OSAH. On June 24, 2011, Plaintiff moved OSAH for a ruling "setting forth precisely what OSAH's subject matter and personal jurisdiction are in this matter and what causes of action can and will be heard." (Doc. 222-54 at 1). In that motion, Plaintiff urged,

> [T]he law is clear that OSAH only has subject matter jurisdiction over IDEA claims and only has personal jurisdiction over the local educational agency, in this case, the Fulton County School District ("FCSD"), and does not have jurisdiction to hear or rule upon non-IDEA claims or to make determinations regarding individuals.

(*Id.* at 2). Plaintiff argued that "OSAH does not have jurisdiction over non-IDEA claims," and that "it does not even make sense to say a parent must exhaust non-IDEA claims in an IDEA forum." (*Id.* at 7). Plaintiff's current position—that all of his non-IDEA claims were subject to administrative exhaustion—contradicts the arguments he made to OSAH.

After making the diametrically opposite argument to OSAH, Plaintiff may not now ward off summary judgment by arguing that his non-IDEA claims were also subject to the IDEA's exhaustion requirement. The doctrine of judicial estoppel prohibits such an abrupt reversal of course. *See Pegram v. Herdrich,* 530 U.S. 211, 228, 120 S. Ct. 2143, 2154 n. 8 (2000) ("Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a

---

83). That is not so. In that order, this Court explicitly permitted Defendants to renew their statute of limitations argument in a summary judgment motion if discovery yielded evidence that Plaintiff's claims are time-barred. (*Id.* at 9).

contradictory argument to prevail in another phase."); *Lampi Corp. v. Am. Power Prod., Inc.*, 228 F.3d 1365, 1377 (Fed. Cir. 2000) ("[Judicial estoppel] also applies to administrative proceedings in which a party obtains a favorable order by making an argument that it seeks to repudiate in a subsequent judicial proceeding."); *Clark v. Bd. of Regents of Univ. Sys. of Georgia*, 243 F. Supp. 3d 1367, 1374 (S.D. Ga. 2017) ("Judicial estoppel is an equitable doctrine that prevents litigants from taking one position in one legal proceeding and asserting a contrary position in a subsequent or different legal proceeding."); s*ee also Slater v. United States Steel Corp.*, 871 F.3d 1174, 1176 (11th Cir. 2017) ("The equitable doctrine of judicial estoppel is intended to prevent the perversion of the judicial process and protect its integrity by prohibiting parties from deliberately changing positions according to the exigencies of the moment.") (citation and punctuation omitted).

Moreover, Plaintiff's newly adopted position regarding administration exhaustion is simply wrong. The IDEA exhaustion requirement applies to claims brought "under such laws seeking relief that is also available under [20 U.S.C. § 1415]." 20 U.S.C. § 1415(l).  In his IDEA due process hearing request, Plaintiff alleged personal injury tort claims under federal and state law in addition to his allegations that he was denied a free and appropriate public education ("FAPE"). Plaintiff explicitly sought "significant monetary damages" based on those personal injury claims. (Doc. 222 at ¶ 291). The IDEA's administrative exhaustion

requirement did not apply to his personal injury claims, because the IDEA does not authorize recovery of monetary damages for personal injury. *Ortega v. Bibb Cty. Sch. Dist.*, 397 F.3d 1321, 1326 (11th Cir. 2005) ("the IDEA does not provide a cause of action for tort-like relief").[2]

The exhaustion requirement is particularly inapposite when applied to Plaintiff's claims against the individual Defendants. The IDEA does not permit recovery against individuals. *See Rohn v. Palm Beach Cty. Sch. Bd.*, No. 11-81408-CIV, 2012 WL 6652940, at *3 (S.D. Fla. Dec. 21, 2012) ("Plaintiff may not, however, pursue an IDEA claim against private entities and individuals as opposed to the school district or public agencies."); *B.I. v. Montgomery Cnty. Bd. of Educ.*, 750 F. Supp. 2d 1280, 1283 (M.D. Ala. 2010) ("IDEA does not create liability against individual defendants."). In light of the fact that the IDEA authorizes no form of relief against individual persons, Plaintiff cannot credibly argue that the IDEA required him to exhaust his tort claims against the individual Defendants.

Last, even if Plaintiff were correct that he was required to exhaust administrative remedies for his non-IDEA claims, this lawsuit would still be untimely. On July 29, 2011, OSAH issued an Order on Plaintiffs' Motion for Ruling

---

[2] Plaintiff conceded in his Motion for Ruling on Jurisdiction that his due process hearing request sought "inter alia, recovery for extensive monetary damages for the wilfull [*sic*], intentional, malicious, and conscience shocking [*sic*] abuse and other acts by the FCSD and certain individuals of A.W. for an entire school year. Under *Ortega*, this is not a remedy available under the IDEA." (Doc. 222-54 at 7).

on Jurisdiction, holding that its subject matter jurisdiction only encompassed Plaintiff's claims for denial of FAPE under the IDEA. (Doc. 222-55 at 2-3). OSAH concluded that it lacked subject matter jurisdiction over "causes of action that arise under other federal laws," including § 1983, Section 504, and the ADA, and also that it lacked personal jurisdiction over any individual defendant. (*Id.*). That order officially terminated administrative proceedings concerning Plaintiff's non-IDEA claims. The July 29, 2011, jurisdictional order, therefore, constituted a final administrative decision regarding Plaintiff's non-IDEA claims under Section 504, the ADA, § 1983, and state law. Even assuming that the administrative exhaustion requirement tolled the two-year statute of limitations governing those claims, the July 29, 2011, order ended that tolling. And Plaintiff has pointed to no authority to support the notion that the tolling continued through February 1, 2012. Plaintiff did not file this lawsuit until January 31, 2014, two years and six months after OSAH's July 29, 2011, order and six months after the statute of limitations had expired. Plaintiff's claims are untimely.

**b. Plaintiff's Argument in Favor of Indefinite Tolling Conflicts with Georgia Law.**

Plaintiff argues that because he remains "severely mentally impaired," the tolling of the two-year statute of limitations under O.C.G.A. § 9-3-90(a) remains in effect until he is no longer incompetent. (Doc. 252 at 7). But Plaintiff's various physical and mental impairments preclude him from ever becoming competent.

6

Thus, without saying so explicitly, Plaintiff asks this Court to exempt him from all statutes of limitation because he suffers from permanent incompetency. This Court should reject that argument, which is incompatible with long-standing Georgia law.[3] *See Jim Walter Corp. v. Ward*, 245 Ga. 355, 357, 265 S.E.2d 7, 9 (1980) ("To the extent that the Court of Appeals has held that the statute of limitations might never run against a person who is illiterate or ignorant, we disagree."); *Price v. Dep't of Transp.*, 214 Ga. App. 85, 88, 446 S.E.2d 749, 752 (1994) (rejecting the plaintiff's argument that "the statute of limitation continued indefinitely.").

Plaintiff also challenges Defendants' argument that the tolling ended when he, through his court-appointed guardian and attorney, filed suit with OSAH on June 16, 2011. Plaintiff relies on a fifty-four-year-old decision by the Georgia Court of Appeals, *Whalen v. Certain-Teed Prod. Corp.*, 108 Ga. App. 686, 687, 134 S.E.2d 528, 529 (1963), and a litany of cases from other states to support his position. His argument is meritless.

The case law from the other states, of course, is non-binding. *Thompson v. E. Air Lines*, 200 Ga. 216, 222, 39 S.E.2d 225, 229 (1946). And Plaintiff's reliance on *Whalen* is misplaced. *Jim Walter Corp.* and *Price*, *supra*, establish that the tolling

---

[3] Moreover, in its Order of January 9, 2015, this Court recognized, "Case law addressing when the tolling of the statute of limitations is lifted for incapacitated plaintiffs is limited, but it is clear that the statute of limitations does not necessarily toll indefinitely." (Doc. 83 at 11). Plaintiff's insistence on indefinite tolling disregards this Court's prior ruling on this issue.

under O.C.G.A. § 9-3-90(a) does not necessarily continue forever. So, under what circumstances does the tolling end?

*Cline v. Lever Bros. Co.*, 124 Ga. App. 22, 23, 183 S.E.2d 63, 66 (1971), *Price*, 214 Ga. App. at 88, 446 S.E.2d at 752, and *Harper v. Patterson*, 270 Ga. App. 437, 439, 606 S.E.2d 887, 891 (2004), collectively provide the clearest, most recent answer to that question. Those cases, each decided after *Whalen*, indicate that incompetency-based tolling lasts until (1) the plaintiff regains the capacity to act for himself or herself or (2) an appointed guardian or next friend brings a legal action to recover for an injury suffered by the incapacitated plaintiff. *Harper*, 270 Ga. App. at 439, 606 S.E.2d at 891 ("statute of limitation tolled until capacity to act for himself is regained or until a guardian is appointed and acts for him, or until a 'next friend thereafter, during the continuance of the disability of plaintiff, brings an action seeking recovery for the injury sustained'") (quoting *Cline,* 124 Ga. App. at 23, 183 S.E.2d at 66); *accord Price*, 214 Ga. App. at 88, 446 S.E.2d at 752.

The *Cline-Price-Harper* line of cases reflects Georgia courts' recognition that tolling under O.C.G.A. § 9-3-90(a) must end either when an incompetent plaintiff actually becomes competent or when the incompetent plaintiff attains de facto competence through a legal proxy and that proxy acts on the plaintiff's behalf. Even though *Harper* and *Price* applied that principle in the context of incompetent plaintiffs who filed lawsuits through next friends, the cases strongly suggest the

same rule applies when a court-appointed guardian files suit on behalf of an incapacitated plaintiff.[4] Their uniform application of the rule is sound because neither the Federal Rules of Civil Procedure nor the Georgia Civil Practice Act draw a distinction between next friends and guardians regarding filing suit on behalf of an incompetent plaintiff. *See* Fed. R. Civ. P. 17(c); O.C.G.A. § 9-11-17(c).

The undisputed evidence shows that all conditions necessary for lifting the tolling under § 9-3-90(a) were present as of June 16, 2011. Prior to that date, a court had appointed Ms. Lisa Williams, Plaintiff's mother, to be Plaintiff's guardian ad litem. On June 16, 2011, Plaintiff, through his court-appointed guardian, filed suit against FCSD with OSAH. Plaintiff insists that his due process hearing request was not sufficient to end the tolling, because "[r]equesting a due process hearing is not filing a case on statutory and constitutional." (Doc. 252 at 11). But Plaintiff cited no authority for that puzzling assertion. And his argument is especially unpersuasive given that the IDEA required Plaintiff to file a due process hearing request to recover for his alleged denial of FAPE. Plus, however misguided, Plaintiff's lawsuit with OSAH sought an assortment of remedies, including monetary relief, under state and federal law for misdeeds allegedly perpetrated by FCSD and numerous FCSD employees. Undoubtedly, under *Cline*, *Price*, and *Harper*, Plaintiff's act of filing a

---

[4] This Court previously acknowledged that Plaintiff's filing of a due process hearing request likely lifted the tolling. (Doc. 83 at 11, fn. 8).

due process hearing request on June 16, 2011, lifted the tolling period. Plaintiff did not file suit until January 31, 2014, missing the limitations period by more than seven months.

### c.  The Continuing Violation Doctrine Is Inapplicable.

Plaintiff's last, sparsest argument concerning the timeliness of his claims rests on the continuing violation doctrine. That doctrine provides that a plaintiff's action is not time-barred where some of the alleged violations occurred within the statutory period, even though other violations occurred outside of it, because the early acts were part of a continuing wrong. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1221 (11th Cir. 2001). "The continuing violation doctrine is premised on the equitable notion that the statute of limitations ought not to begin to run until facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated." *Id.* at 1222. "A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Parrish v. City of Opp, Ala.*, 898 F.Supp. 839, 843 n. 2 (M.D.Ala. 1995) (citing *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981)). "Where a continuing violation is found, the plaintiffs can recover for any violations for which the statute of limitations has not expired." *Knight v. Columbus, Ga.*, 19 F.3d 579, 581 (11th Cir. 1994).

The evidence does not support application of the continuing violation doctrine. Plaintiff's mother and guardian, Lisa Williams, admitted during her

deposition that by April 2011, she knew Melanie Pickens had abused Plaintiff. (Lisa Williams Depo. at 138:20-25). And on June 16, 2011, Plaintiff filed a due process hearing request, supported by a lengthy narrative that substantially mirrored the Complaint in this case and even named many of the Defendants. Ms. Williams' testimony and the allegations in the OSAH complaint establish that by June 16, 2011, Plaintiff and his guardian knew about facts supportive of the causes of action alleged in this case. Plaintiff has not produced evidence of any illegal acts by FCSD that occurred on or after June 16, 2011.

Rather, Plaintiff alleges, "Defendants' conspiracy continues," but identifies no acts after June 16, 2011, that could remotely support a conspiracy claim under § 1983 for violation of Plaintiff's equal protection or due process rights. (Doc. 252 at 12). Instead, Plaintiff highlights FCSD's alleged failure to produce educational records and emails during discovery. Plaintiff's effort to embellish a grievance concerning the completeness of FCSD's discovery responses and transform it into a constitutional conspiracy does not justify application of the continuing violation doctrine to extend the statute of limitations.

## II.   THE GEORGIA CONSTITUTION GRANTS SOVEREIGN IMMUNITY TO SCHOOL DISTRICTS.

FCSD has argued that sovereign immunity bars Plaintiff's claims for monetary relief under the due process and equal protection provisions of the Georgia Constitution. Plaintiff does not dispute the general proposition that sovereign

immunity applies to due process and equal protection claims under the Georgia Constitution. And Plaintiff points to no statutory waiver applicable to his state constitutional claims. Instead, he argues that the Georgia Constitution does not extend sovereign immunity to FCSD, because it "is not a department of agency of the State of Georgia." (Doc. 252 at 13). "All one has to do," Plaintiff tells us, "is look up the state agencies," and FCSD is nowhere to be found. (*Id.*). This argument is baseless.

While it is unclear where Plaintiff has chosen to "look up the state agencies," it seems clear he did not thoroughly "look up" the law on this issue. Georgia courts have held for decades that the Georgia Constitution grants sovereign immunity to school districts, such as FCSD. *Bomia v. Ben Hill Cty. Sch. Dist.*, 320 Ga. App. 423, 424, 740 S.E.2d 185, 188 (2013) ("Under Art. I, Sec. II, Par. IX of the Georgia Constitution of 1983, sovereign immunity extends to a county-wide school district, such as the School District."); *accord City of Dublin Sch. Dist. v. MMT Holdings, LLC*, No. A18A0506, 2018 WL 3083617, at *1 (Ga. Ct. App. June 22, 2018); *Everson v. Dekalb Cty. Sch. Dist.*, 344 Ga. App. 665, 667, 811 S.E.2d 9, 12 (2018), reconsideration denied (Feb. 23, 2018); *Evans v. Gwinnett Cty. Pub. Sch.*, 337 Ga. App. 690, 692, 788 S.E.2d 577, 580 (2016); *Coffee Cty. Sch. Dist. v. Snipes*, 216 Ga. App. 293, 294, 454 S.E.2d 149, 150 (1995). That case law is conclusive regarding FCSD's entitlement to sovereign immunity.

Plaintiff argues the Eleventh Circuit Court of Appeals' decision in *Lightfoot v. Henry Cty. Sch. Dist.*, 771 F.3d 764 (11th Cir. 2014), supports his argument. He is mistaken. The *Lightfoot* decision did not decide whether the Georgia Constitution grants sovereign immunity to school districts. Instead, it addressed whether the Eleventh Amendment to the *United States* Constitution granted school districts immunity from suit in federal court. *Id.* at 766. That issue has no bearing on FCSD's immunity from claims under the Georgia Constitution and, therefore, provides no support to Plaintiff's baseless argument.

## III.   PLAINTIFF LACKS EVIDENCE OF AN UNOFFICIAL CUSTOM OR RATIFICATION BY A FINAL POLICYMAKER.

FCSD has argued that Plaintiff lacks evidence to establish that his alleged constitutional injuries resulted from an official policy or widespread custom implemented by FCSD or a decision by any of FCSD's final policymakers. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) ("a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). Plaintiff's rambling, scattershot response to that argument precludes a point-by-point rebuttal. In short, Plaintiff has failed to raise a genuine issue of material fact for three reasons. First, aside from two reports that

reached the central office, one in 2004 and the other in 2007, Plaintiff has not pointed to evidence that FCSD or the Fulton County Board of Education ("Board") knew about the extent of Melanie Pickens' abusive conduct. Second, FCSD responded reasonably to the only two reports that reached the central office. And third, no final policymaker knew about and ratified Pickens' abusive conduct.

### a. **FCSD Lacked Knowledge of the Persistent Abuse at Hopewell Middle School.**

Absent evidence that an official policy caused a constitutional deprivation, a plaintiff may establish *Monell* liability by presenting evidence of a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom and usage with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). The government entity must tacitly authorize the unlawful practice or displays deliberate indifference towards the misconduct. *Griffin v. City of Opa–Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001). Accordingly, "actual or constructive knowledge of such customs must be attributed to the *governing body* of the municipality." *Depew v. City of St. Marys, Georgia*, 787 F.2d 1496, 1499 (11th Cir. 1986) (emphasis added); *Denham v. Corizon Health, Inc.*, No. 6:13-CV-1425-ORL-40K, 2015 WL 3509294, at *6 (M.D. Fla. June 4, 2015), aff'd, 675 F. App'x 935 (11th Cir. 2017) ("A local government cannot be held liable under § 1983 either for customs of which its

policymakers had no knowledge or for the constitutional wrongdoings of its employees under respondeat superior.") (internal citations omitted).

Plaintiff has not presented sufficient evidence to allow a reasonable jury to conclude that FCSD had actual or constructive knowledge of a pattern of abuse and mistreatment committed by Pickens against her students. In his response, Plaintiff alleges that a superintendent, area superintendent, other central office administrators "were aware of the daily abuse." (Doc. 252 at 18). But Plaintiff's response conspicuously cites no evidence to substantiate that allegation. Instead, the members of the Board and all pertinent central office administrators that served from 2004 to 2007—including both superintendents, the chief human resources officers, the executive directors of FCSD's special education program, and the area superintendent for Hopewell Middle School—have affirmed that they did not know of any acts of abuse committed by Pickens between 2004 and 2007. (Doc. 222 at ¶¶ 221-274).

The evidence indicates that only Principal Frances Boyd and a handful of employees at Hopewell Middle School knew the extent of Pickens' abusive conduct. Their knowledge is insufficient to impute actual or constructive knowledge to FCSD. *See Denham v. Corizon Health, Inc.,* No. 6:13-CV-1425-ORL-40K, 2015 WL 3509294, at *6 (M.D. Fla. June 4, 2015), aff'd, 675 F. App'x 935 (11th Cir. 2017) (holding that knowledge of unlawful conduct held by corrections officers and their

immediate supervisors was not enough to impute knowledge to the county); *Escandon v. Miami-Dade Cty.*, No. 08-22263-CIV, 2009 WL 1288321, at *1 (S.D. Fla. May 8, 2009) (concluding that allegations of intermediate county employees' knowledge of medical staffing inadequacies did not state a claim for *Monell* liability). Lacking evidence that either FCSD's governing board or its pertinent policymakers were aware of Pickens' repeated abuse of her students, Plaintiff has failed to raise a genuine issue of material fact about FCSD's knowledge of an unconstitutional custom or practice.

### b. FCSD Did Not Act with Deliberate Indifference in Responding to the 2004 and 2007 Reports of Abuse.

At most, Plaintiff can show that two complaints of abuse concerning Pickens reached the central office, the first in November 2004 and the second in 2007. (*See* Doc. 222 at ¶¶ 95, 147, 154). Those two events, separated by more than two years, do not establish a widespread custom or policy of condoning abuse. *See Depew*, 787 F.2d at 1499 ("Normally random acts or isolated incidents are insufficient to establish a custom or policy."); *see e.g., Thomas v. City of Jacksonville,* No. 3:13-CV-737-J-32MCR, 2017 WL 3316478, at *7 (M.D. Fla. Aug. 3, 2017), aff'd, No. 17-14016, 2018 WL 1907146 (11th Cir. Apr. 23, 2018) (concluding two incidents of misconduct did not establish custom); *Pedraza v. Hall Cty., Ga.*, No. 2:14-CV-00311-RWS, 2015 WL 1478930, at *3 (N.D. Ga. Mar. 31, 2015) (dismissing § 1983 claim where complaint only identified two incidents of unlawful conduct); *Prieto v.*

*Metro. Dade Cty.,* 718 F. Supp. 934, 938 (S.D. Fla. 1989) (holding that four incidents occurring over two years insufficient to establish custom).

Furthermore, the evidence does not suggest FCSD acted with deliberate indifference to the 2004 and 2007 complaints. "[A] municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy 'if the municipality tacitly authorizes these actions or displays deliberate indifference' towards the misconduct." *Griffin v. City of Opa–Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001). In response, to the 2004 complaint, Boyd solicited advice from Ralph Lynch, the interim director of secondary personnel; contacted a school social worker; met with Pickens to discuss her alleged misconduct; issued her a letter of reprimand; and placed her on a performance improvement plan. (Doc. 222 at ¶¶ 95, 105-108, 123-126). The social worker, Stephanie Schuette, independently investigated the complaint and determined it did not warrant a referral to the Department of Children and Family Services ("DFCS"). (*Id.* at ¶¶ 73-91).

When FCSD's central office received the complaint of abuse concerning Jake Marshall in May 2007, it hired an outside investigator to investigate the matter and, by July 2007, decided to begin termination proceedings against Pickens. (*Id.* at ¶¶ 147, 154, 158-159, 183). Pickens, however, resigned in July 2007 before termination proceedings could begin. (*Id.* at ¶ 183). FCSD also referred Pickens to the Georgia Professional Standards Commission. (*Id.* at ¶ 184).

FCSD's actions in responding to the two complaints against Pickens were negligent at worst, not "clearly unreasonable under the known circumstances," and therefore, did not constitute deliberate indifference. *KB v. Daleville City Bd. of Educ.*, 536 F. App'x 959, 963 (11th Cir. 2013); *see also Sauls v. Pierce Cty. Sch. Dist.,* 399 F.3d 1279, 1285 (11th Cir. 2005) (holding that school did not act with deliberate indifference to a complaint of sexual harassment of a student by a teacher when it investigated the allegations, interviewed the parties, monitored the teacher's conduct, and counseled the teacher about her interactions with students); *Hackett v. Fulton Cty. Sch. Dist.*, 238 F. Supp. 2d 1330, 1366 (N.D. Ga. 2002) (finding no deliberate indifference in response to a complaint of sexual abuse of a student where FCSD removed the offending teacher from his classroom and promptly investigated the complaint). Even though Plaintiff contends that FCSD should have immediately terminated Pickens after the 2004 incident, "it is not enough for the plaintiff to show that there were things that the school district could have done differently, or things it should have done differently." *Hackett*, 238 F. Supp. 2d. at 1366. Instead, Plaintiff must show that FCSD acted with *deliberate indifference* to known instances of abuse. Plaintiff has failed to present evidence to meet that standard.

### c.  **No Final Policymaker Ratified Pickens' Abusive Conduct.**

Last, Plaintiff challenges various portions of FCSD's argument that no final policymaker for FCSD approved Pickens' mistreatment of her students. First, Plaintiff appears to suggest that various Defendants, including Boyd, Wade, Merritt, and Lynch, had the authority to terminate Pickens' conduct. That arguments conflicts with Georgia law. State law dictates whether a school official has final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). Georgia law vests exclusive authority to terminate a teacher's contract with the local board of education. *See* Ga. Const., Art. VIII, § 5, ¶ II; O.C.G.A. § 20–2–940; *see also Wright v. Atlanta Pub. Sch.,* No. 1:17-CV-975-ODE-LTW, 2018 WL 1249312, at *5 (N.D. Ga. Feb. 15, 2018), report and recommendation adopted, No. 1:17-CV-975-ODE-LTW, 2018 WL 1247879 (N.D. Ga. Mar. 8, 2018) (explaining the procedures under the Georgia Fair Dismissal Act, O.C.G.A. §§ 20-2-940, *et seq.*). [5] Accordingly, Plaintiff's arguments regarding the authority of Defendants to fire Pickens are without merit.

Plaintiff also contends that either Harvey Beasley, director of Social Work Services for FCSD, or Stephanie Schuette, school social worker, "had final decision-making authority to have stopped the abuse" because they had the authority to report

---

[5] This Court has previously recognized that the local board of education retains the exclusive power to hire and fire educators. (Doc. 126 at 43).

the 2004 complaint concerning Pickens to DFCS. Neither Beasley nor Schuette, however, had authority to create policy for FCSD. That power was vested solely in the Board. (Doc. 222 at ¶ 38). Plus, even though Beasley or Schuette could have referred Pickens to DFCS in 2004, that does not make them final policymakers, because any such referral would have been subject to further administrative review by DFCS. *See* O.C.G.A. § 19-7-5; § 19-15-2; § 49-5-8(a)(2)(B); § 49-5-182; *Mandel v. Doe*, 888 F.2d 783, 792 (11th Cir. 1989) ("the mere delegation of authority to a subordinate to exercise discretion is not sufficient to give the subordinate policymaking authority."). Beasley and Schuette, therefore, were not final policymakers. Consequently, their decision not to refer Pickens to DFCS in 2004 cannot serve as grounds for establishing *Monell* liability against FCSD.

## <u>CONCLUSION</u>

FCSD respectfully asks this Court to grant its Motion for Summary Judgment regarding that claims asserted against it by Plaintiff Alex Williams.

[SIGNATURE TO FOLLOW ON NEXT PAGE]

Respectfully submitted this 2nd day of July, 2018.

/s/*Brandon O. Moulard*
Charles T. Huddleston
Georgia Bar No. 373975
Brandon O. Moulard
Georgia Bar No. 940450
Melody P. Bray
Georgia Bar No. 252011
*Attorneys for Fulton County School District,*
*Paula Merritt, Vicki Denmark, Ralph Lynch,*
*James Wilson, Ronnie Wade, Stephanie*
*Schuette, Harvey Beasley, William*
*Thompson, Nancy Wadel, Dorothy Pettes,*
*Nancy Shelley, Donna Faulkner, Emmett*
*Shaffer, Cindy Kanner, Michael Vanairsdale,*
*and Karen Weinmann*

NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station / 201 17th Street, NW / Suite 1700
Atlanta, GA  30363
Phone:  (404) 322-6000
Fax:  (404) 322-6050
charles.huddleston@nelsonmullins.com
brandon.moulard@nelsonmullins.com
melody.bray@nelsonmullins.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing was prepared using Times New Roman font, 14-point type, which is one of the font and print selections approved by the Court in L.R. 5.1(B).

This 2nd day of July, 2018.

/s/*Brandon O. Moulard*
Charles T. Huddleston
Georgia Bar No. 373975
Brandon O. Moulard
Georgia Bar No. 940450
Melody P. Bray
Georgia Bar No. 252011
*Attorneys for Fulton County School District, Paula Merritt, Vicki Denmark, Ralph Lynch, James Wilson, Ronnie Wade, Stephanie Schuette, Harvey Beasley, William Thompson, Nancy Wadel, Dorothy Pettes, Nancy Shelley, Donna Faulkner, Emmett Shaffer, Cindy Kanner, Michael Vanairsdale, and Karen Weinmann*

NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station / 201 17th Street, NW / Suite 1700
Atlanta, GA  30363
Phone:  (404) 322-6000
Fax:  (404) 322-6050
charles.huddleston@nelsonmullins.com
brandon.moulard@nelsonmullins.com
melody.bray@nelsonmullins.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of July, 2018, I electronically filed the foregoing **DEFENDANT FULTON COUNTY SCHOOL DISTRICT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING THE CLAIMS ASSERTED BY PLAINTIFF ALEX WILLIAMS** using CM/ECF, which will send notification of such filing to attorneys of record listed below:

Chris Vance, Esq.
Office of Chris E. Vance, P.C.
2415 Oak Grove Valley Rd., Ste 100
Atlanta, GA 30345
chris@chrisvancepc.com
*Counsel for Plaintiffs*

John D. Wales, Esq.
Law Offices of John D. Wales
600 Village Trace, Suite 175
Marietta, GA 30067
johndwales@aol.com
*Counsel for Frances Boyd*

Lawrence B. Domenico, Esq.
Jessica C. Lawrence
Mozley, Finlayson & Loggins, LLP
5605 Glenridge Dr., Ste. 900
Atlanta, GA 30342-1386
ldomenico@mfllaw.com
jlawrence@mfllaw.com
*Co-Counsel for Def. Paula Merritt*

/s/*Brandon O. Moulard*
Charles T. Huddleston
Georgia Bar No. 373975
Brandon O. Moulard
Georgia Bar No. 940450
Melody P. Bray
Georgia Bar No. 252011
*Attorneys for Fulton County School District, Paula Merritt, Vicki Denmark, Ralph Lynch, James Wilson, Ronnie Wade, Stephanie*

*Schuette, Harvey Beasley, William Thompson, Nancy Wadel, Dorothy Pettes, Nancy Shelley, Donna Faulkner, Emmett Shaffer, Cindy Kanner, Michael Vanairsdale, and Karen Weinmann*

NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station / 201 17th Street, NW / Suite 1700
Atlanta, GA  30363
Phone:  (404) 322-6000
Fax:  (404) 322-6050
charles.huddleston@nelsonmullins.com
brandon.moulard@nelsonmullins.com
melody.bray@nelsonmullins.com